**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 97-4113

RICHARD HUGH WHITTLE,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca B. Smith, District Judge.
(CR-96-151)

Submitted: November 18, 1997

Decided: January 14, 1998

Before WILKINS and LUTTIG, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Howard M. Miller, MILLER & MARX, P.C., Norfolk, Virginia, for
Appellant. Helen F. Fahey, United States Attorney, Laura M. Ever-
hart, Assistant United States Attorney, Norfolk, Virginia, for Appel-
lee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Richard Hugh Whittle pled guilty to murder, in violation of 18 U.S.C.A. § 1111 (West Supp. 1997), and rape, in violation of 18 U.S.C.A. § 2031 (current version at 18 U.S.C.A. § 2241 (West Supp. 1997)). He was sentenced to consecutive life sentences. Whittle preserved two issues for appeal: (1) whether the statute of limitations had run on the offenses; and (2) whether his confession should have been suppressed. We have reviewed the issues, and we affirm.

I

On March 25, 1982, Pamela Ann Kimbrue was raped and murdered at the Naval Air Station in Norfolk, Virginia. Her body was found inside her car, in the waters off the Station. Whittle was soon identified as a suspect, but the case was not prosecuted.

In 1995, the case was revived and assigned to the Naval Criminal Investigative Service (NCIS) "Cold Case Squad," which reviews unsolved homicides using modern forensic techniques. A fingerprint lifted from the car matched Whittle's, and seminal fluid from Kimbrue's body was consistent with Whittle's DNA.

On June 26, 1996, Whittle was interviewed in California by two special agents of the NCIS. The agents, dressed in casual civilian clothing, approached Whittle as the latter was going to work. They stated that they wanted to talk to him about Kimbrue's death. Whittle went into the building to check in with his boss, leaving the agents outside. Whittle's supervisor approached the agents and asked them to speak to the corporation's attorney over the phone. They did so, then left while Whittle and his supervisor consulted with the attorney. The agents emphasized the voluntary nature of the interview, and Whittle agreed that he would talk to them.

2

Whittle accompanied the agents to their hotel room. They informed Whittle of his <u>Miranda</u> rights, and he initialed a form stating that he understood them. The agents asked Whittle if he wanted an attorney, and "he indicated he was willing to speak to us." All parties signed the rights waiver. When questioned, Whittle soon admitted his involvement in the crime. Over the course of the interview, Whittle altered his story several times, finally admitting that he lay in wait for Kimbrue, tied her up, struck her on the head, sexually assaulted her, and, because she had seen his face, determined to "put her in the water."

At a suppression hearing in the district court, Whittle alleged that he requested an attorney at one point in the interview but was denied one. According to the NCIS agent, Whittle mentioned an attorney only in relation to getting a second opinion as to whether the statute of limitations had run on the crime. The district court found that Whittle's testimony that he asked for a lawyer was not credible, and denied the motion to suppress.

II

Whittle alleges that the indictments should have been dismissed on statute of limitations grounds. There is no limitations period for prosecuting a capital offense. 18 U.S.C.A. § 3281 (West Supp. 1997). Under 18 U.S.C.A. § 3282 (West Supp. 1997), "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . . within five years after such offense shall have been committed." The indictments in this case were issued fourteen years after the offense. Therefore, unless they are capital offenses Whittle cannot be tried and punished for them. A capital offense is one punishable by death. 18 U.S.C. § 3281.

At the time of the offense, 18 U.S.C. § 2031 provided, "whoever, within the special maritime and territorial jurisdiction of the United States, commits rape shall suffer death, or imprisonment for any term of years or for life." Section 1111, 18 U.S.C., provided in part, "whoever is guilty of murder in the first degree, shall suffer death unless the jury qualifies its verdict . . . ." Whittle argues that because the death penalty could not constitutionally be imposed in 1982 under <u>Furman v. Georgia</u>, 408 U.S. 238 (1972), his crimes are not capital

3

offenses. He also argues that, as Congress has eliminated the death penalty for rape, it is not a capital crime.

Rather than eliminating the death penalty for rape, Congress has revised the language of the relevant statutes. Under 18 U.S.C.A. § 2241 (West Supp. 1997) and 18 U.S.C.A. § 2245 (West Supp. 1997), Whittle's actions against Kimbrue would constitute aggravated sexual abuse resulting in death. This crime is punishable by death or imprisonment for a term of years or for life. 18 U.S.C. § 2245. There-fore, Whittle's crime was a capital offense in 1982, and it remains a capital offense. The murder of Kimbrue is also a capital offense. The fact that Furman made it questionable whether the death penalty could constitutionally be imposed does not alter the fact that the offenses were capital crimes, and it does not "repeal statutes . . . which depend for their operation on the defendant being charged with a `capital crime.'" United States v. Watson, 496 F.2d 1125, 1127 (4th Cir. 1973); see United States v. Manning, 56 F.3d 1188, 1195-96 (9th Cir. 1995). We review the district court's decision regarding the applicability of a particular statute of limitations de novo, Manning, 56 F.3d at 1195, and we hold that the district court ruled correctly in denying Whittle's motion to dismiss the indictments on statute of lim-itations grounds.

III

Whittle argues that his motion to suppress his confession should have been granted because he asked to see an attorney. The district court made factual findings that the NCIS agents did not intimidate Whittle during the interview, and Whittle admitted his involvement in the crime early in the session. In addition, the district court found that Whittle understood and signed his rights waiver, knew that he could stop the interview at any time and request a lawyer, and did not do so. We review these factual findings under a clearly erroneous stan-dard. United States v. Gordon, 895 F.2d 932, 939 (4th Cir. 1990).

Whittle does not dispute that he made an initial knowing and vol-untary waiver of his right to counsel. A suspect must unambiguously request an attorney to invoke his right to counsel in the course of an interrogation. Davis v. United States, 512 U.S. 452, 459 (1994). Here, Whittle had already admitted the acts that constituted the crime by the

4

time he made any mention of a lawyer. The district court did not err in holding that Whittle did not make an unequivocal request for an attorney such that a reasonable officer in those circumstances "would understand the statement to be a request for an attorney." <u>Id.</u> Therefore, the district court's denial of his motion to suppress is affirmed.

Accordingly, we affirm Whittle's conviction and sentence. We grant his motion to file a supplemental, pro se brief. We have considered the issues raised in that brief and find them to be without merit. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

5